**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **M.W. and B.M.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 4:26-CV-00793 |
| | : | |
| **ATHENS AREA SCHOOL DISTRICT** | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

## AMENDED COMPLAINT

AND NOW, comes Plaintiffs M.W. and B.M., by and through counsel, Andreozzi + Foote, who file this Amended Complaint against Defendant, Athens Area School District, and in support thereof, state as follows:

## PARTIES

1. Plaintiff M.W. ("M.W.") is an adult female who resides in Pennsylvania and can be reached by and through her counsel, Andreozzi + Foote.

2. Plaintiff B.M. ("B.M.") is an adult female who resides in Texas and can be reached by and through her counsel, Andreozzi + Foote.

3. Plaintiffs are identified by their initials since at all times relevant they were minors, this case involves their childhood sexual abuse, and publicly revealing their identity would cause her further harm. Plaintiffs' identities have been disclosed to Defendant and Defendant's counsel in this action.

4. Defendant Athens Area School District (the "District" or "Defendant") is a public school district in Bradford County, Pennsylvania, which receives federal financial assistance per Title IX, 20 U.S.C. § 1681(a).

5. The District is located at 100 Canal Street, Athens, PA 18810.

6. At all relevant times, Defendant operated Athens Area High School (the "High School"), located at 401 W. Frederick Street, Athens, PA 18810, and Harlan Rowe Middle School (the "Middle School") located at 200 Wildcat Way, Athens, PA 18810.

7. At all relevant times, Plaintiffs were students at the District.

8. The District is a local agency under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. §§ 8541-8564.

9. Under the PSTCA, a local agency is generally shielded from tort liability for negligent acts, subject to certain exceptions. Plaintiff's claims herein fall under the PSTCA exception enumerated at 42 Pa.C.S. § 8542(b)(9), which states: "Sexual abuse.—Conduct which constitutes an offense enumerated under [42 Pa.C.S. § 5551(7)] (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."

10. Plaintiffs were subject to a violation of § 5551(7). As such, the District does not have PSTCA immunity for the state tort claims in this matter.

## **JURISDICTION AND VENUE**

11. This Court has jurisdiction over Count I, Count II, and Count III pursuant to 28 U.S.C. § 1331, which gives United States District Courts jurisdiction over civil actions arising under the laws of the United States.

12. This Court also has jurisdiction over Counts IV and V based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The laws of the State of Pennsylvania apply to Counts IV and V.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendant resides in this District and the events giving rise to the claims occurred in this District.

## FACTS

14. This matter arises from the childhood sexual abuse of Plaintiffs by Jason Lavern Isbell ("Isbell" or "Perpetrator"), former employee of Defendant.

15. Upon information and belief, Isbell was employed by the District as a math tutor during the years 2003-2008.

### Plaintiff M.W.

16. In or around 2006, M.W. received tutoring from Isbell.

17. While serving as her tutor, Isbell began grooming M.W. by manipulating her into believing they were in a romantic relationship and that he had genuine feelings of love for her.

18. Unfortunately, Isbell's conduct escalated, and he began to sexually abuse M.W. both on the District premises and elsewhere.

19. Isbell's unlawful sexual contact with M.W. included groping and fondling her genitals, as well as coercing her to engage in the same conduct with him.

20. Upon information and belief, Isbell was prohibited from entering the school with students for tutoring after school hours.

21. Nevertheless, Isbell took a set of school keys without authorization and brought M.W. into the school after hours to conduct tutoring sessions.

22. When entering a classroom, Isbell instructed M.W. to remain silent, claiming there were others in the building and that he did not want anyone to know they were there. He consistently ensured the door was closed during these encounters.

23. As such, Isbell was able to have unsupervised contact with M.W., during which time he engaged in unlawful sexual contact on school grounds.

24. Prior to the cessation of M.W.'s abuse by Isbell, employee(s), volunteers, and/or agent(s) of Defendant, including administrators with the power to take corrective action, became aware of Isbell's inappropriate behavior toward M.W. and other District students.

25. In or around the Fall of 2006, while Isbell was serving as a substitute teacher at the high school, the principal cautioned, warned, and eventually disciplined Isabell on three separate occasions for his improper and unprofessional conduct involving minor students.

26. On the first occasion, Isbell was caught bringing students into his afternoon advisory classroom who were not assigned to that classroom and had no purpose to be in that classroom.

27. Principal Schulze "cautioned" Isbell that he was to meet with students for academic purposes only.

28. Several days after Principal Schulze "cautioned" him, Isbell again violated school policies when he was caught bringing several students into the high school on a Sunday afternoon.

29. Principal Schulze merely issued a verbal warning to Isbell about this second violation that occurred just a few days after she "cautioned" him for a similar school policy violation with minor students at the District.

30. On third occasion, Isbell transported M.W. and another female student from a school-related event to a Walmart.

31. Although Principal Schulze disciplined Isbell for this school policy violation, he was not removed from contact with M.W. or other minor students nor did the District put any safeguards in place.

32. Isbell's repeated behaviors and school policy violations put Defendant's leadership and administration on actual notice that Isbell posed a risk of sexual harm to the District's students, including M.W. and B.M.

33. The District's inaction regarding Isbell's repeated behaviors and school policy violations were deliberately indifferent to the risk that Isbell was continuing to engage M.W., B.M. and other minor students in sexual contact.

34. The abuse continued throughout M.W.'s eighth-grade year and persisted until she reached the age of seventeen (17), during which time Isbell was still employed by the District.

35. Despite having knowledge that Isbell was engaging in inappropriate conduct with M.W., the District allowed him to assume a position as her teacher, gaining even more unsupervised access to her.

36. In 2008, M.W. reported Isbell's continued abuse to her guidance counselor, Mr. Kelleher.

37. At that time, Mr. Kelleher reported the abuse to the authorities.

Plaintiff B.M.

38. In or around the 2006/2007 and 2007/2008 school years, while B.M. was in eighth and ninth grade, Isbell began an inappropriate relationship with her.

39. Isbell's inappropriate relationship with B.M. began with grooming behaviors, including texting her and complimenting B.M.'s appearance at school, and escalated to hugging and kissing her at school on numerous occasions.

40. Isbell admitted that he kissed B.M. approximately twelve (12) times in school.

41. Isbell continually texted B.M. stating that he loved her, wanted to have kids with her, and promised to marry her once she was older.

42. Isbell engaged in intimate and inappropriate physical contact with B.M. on school property during the school year.

43. For example, in or around January 2008, Isbell kissed B.M. while they were alone in Mr. Haggerty's classroom.

44. Then, during Darfur Night of the 2007-08 school year, B.M. went unaccounted for approximately twenty (20) minutes during which time Isbell was "making out" with B.M. in the school library.

45. District teachers and the school librarian knew that Isbell worked out of a room in the library and were aware that B.M. was arriving early to school to meet with Isbell in the library.

46. On or around the last day of the 2007-08 school year, Isbell sexually assaulted B.M. in a District classroom. Isbell kissed and touched B.M., placed his hand down her shorts, and digitally penetrated her vagina. Isbell also had B.M. touch his penis.

47. During the summer of 2008, the abuse escalated. Isbell arranged for B.M. to sneak out of her home at night and meet him in his truck near her house. On at least one occasion, Isbell drove B.M. to a secluded area and engaged in oral sex with her in his truck.

48. According to the criminal documents, teachers and administrators at Harlan Rowe Jr. High School were concerned about B.M. and Isbell's relationship.

49. English teacher Rebecca Stern observed that B.M. was arriving at school early, around 7:45 a.m., to meet Isbell in the library, and that B.M. was leaving morning advisory to visit him. Mrs. Stern became concerned enough that she stopped allowing B.M. to leave advisory to see Isbell.

50. Librarian Pam Mahonski observed B.M. visiting Isbell's tutoring room with increasing frequency and described the relationship as appearing to be "a schoolgirl crush."

51. B.M. visited Isbell before school, between classes, and after school, and District staff were aware of this pattern.

52. In or around November 2007, near Thanksgiving, Mrs. Stern and Mrs. Mahonski reported their concerns about Isbell and B.M. to Harlan Rowe Jr. High School Principal Scott Webster ("Webster").

53. Webster's only response was to meet with Isbell and B.M. and verbally advise "minimal and limited contact." Webster told Isbell to tutor in an open area and to distance himself from B.M. as much as possible.

54. Webster did not report Isbell to law enforcement, did not remove Isbell from contact with B.M., and did not implement any monitoring to ensure his directive was followed.

55. On October 15, 2008, Isbell was criminally charged with two counts of Indecent Assault (18 Pa.C.S. §3126(a)(8)), four counts of Corruption of Minors (18 Pa.C.S. §6391(a)(1), and two counts of Involuntary Deviate Sexual Intercourse (18 Pa.C.S. §3123(a)(7)) based on reports from Plaintiffs.

56. On May 11, 2009, Isbell pled guilty to two counts of Indecent Assault of a Person Under 16 Years of Age; four counts of Corruption of Minors, and five counts of Statutory Sexual Assault (18 Pa.C.S. § 3122.1) and was subsequently sentenced.

57. On October 27, 2009, Isbell surrendered his Pennsylvania professional educator certification in lieu of discipline.

58. The District was aware, prior to Plaintiff's abuse by Isbell, of the risk Plaintiff and other students would be abused by District employees.

59. For example, the District knew that the High School gym teacher, a former District employee, was alleged to have sexual intercourse with another student prior to Plaintiff's abuse.

60. Indeed, the possibility of educator sexual misconduct is inherent in the District's functions.

61. Because of the foregoing conduct of Defendant, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## COUNT I

**Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*. for Sexual Harassment**

***All Plaintiffs v. Defendant***

62. The allegations throughout this Complaint are incorporated as if set forth at length.

63. Upon information and belief, at all relevant times, Athens Area School District was a recipient of federal funds within the meaning of Title IX.

64. Plaintiffs endured sexual harassment and abuse based upon their gender while attending the District.

65. Actual notice of the sexual harassment and abuse was received by appropriate persons within the District.

66. The District responded to the harassment and abuse with deliberate indifference.

67. Due to the District's deliberate indifference to known acts of sexual harassment and abuse of Plaintiffs that was severe, pervasive, and objectively offensive, the District barred Plaintiffs access to education opportunity and education benefits in violation of Title IX.

68. As a direct and proximate cause of Defendant's actions and omissions, and breach of the duties of reasonable care, Plaintiffs were sexually abused, resulting in damages.

## COUNT II

**Violation of 42 U.S.C. § 1983 for District Policy, Custom, or Practice**

***All Plaintiffs v. Defendant***

69. The allegations throughout this Complaint are incorporated as if set forth at length.

70. Under the Fourteenth Amendment, Plaintiffs had a right to bodily integrity, which was violated when Isbell subjected them to inappropriate and unlawful sexual contact.

71. The right Plaintiffs were deprived of was clearly established at the time of their abuse.

72. Despite the knowledge of Isbell's inappropriate contact with Plaintiffs, the District's policies, customs, or practices did not prevent further abuse on behalf of Plaintiffs.

73. The District's reaction (or lack thereof) to complaints and concerns about Isbell became permanent and well settled practice that was the moving force behind Plaintiffs' constitutional violation and injury.

74. Alternatively, the District administration had final policy making authority and caused Plaintiff's constitutional deprivation by failing to respond appropriately to the reports of sexual abuse of Plaintiffs.

75. The District's policy or custom as it related to responding to reports of sexual abuse caused Plaintiffs' constitutional violation and exhibits deliberate indifference to Plaintiffs' constitutional rights.

76. The harm caused to Plaintiffs was foreseeable and fairly direct.

77. As a direct and proximate result of Defendant's violations of Plaintiffs' rights, Plaintiffs have suffered severe and permanent psychological damage and emotional distress.

## COUNT III

## Violation of 42 U.S.C. § 1983 for District Failure to Train

***All Plaintiffs v. Defendant***

78. The allegations throughout this Complaint are incorporated as if set forth at length.

79. Under the Fourteenth Amendment, Plaintiffs had a right to bodily integrity, which was violated when Isbell subjected them to inappropriate and unlawful sexual contact.

80. The right Plaintiffs were deprived of was clearly established at the time of their abuse.

81. The School District acted with deliberate indifference to Plaintiffs' constitutional rights by failing to train the administration, teachers, and staff adequately to prevent the violation of Plaintiffs' rights after having notice of same.

82. The repeated pattern or practice of constitutional violations as seen here makes the need for further training plainly obvious.

83. The harm caused to Plaintiffs was foreseeable and fairly direct.

84. Plaintiff was a foreseeable victim of Defendant's actions.

85. As a direct and proximate result of Defendant's violations of Plaintiffs' constitutional rights, Plaintiff suffered severe and permanent psychological damage and emotional distress.

## COUNT IV

## Negligence, Gross Negligence, and Recklessness

***All Plaintiffs v. Defendant***

86. The allegations throughout this Complaint are incorporated as if set forth at length.

87. At all times relevant, Defendant owed a duty to protect Plaintiffs from sexual abuse.

88. Defendant violated its duty, and was negligent, careless, grossly negligent, and/or reckless as follows:

a. By Defendant's agent leaving children unsupervised while in Defendant's agents care;

b. By failing to establish adequate child abuse prevention policies, procedures, and practices;

c. By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;
d. By failing to adequately screen and supervise all those with access to children, including Isbell;
e. By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of child sexual abuse;
f. By failing to adequately monitor and supervise Isbell and Plaintiffs;
g. By failing to know the risks of sexual abuse inherent in youth serving activities;
h. By failing to require child sex abuse training for parents/guardians and children;
i. By failing to recognize the signs that Isbell was a child sexual predator;
j. By failing to conduct a background check on Isbell;
k. By allowing Isbell to be alone with children despite his history, which was known or should have been known;
l. By failing to report Isbell to the appropriate authorities;
m. By violating Pennsylvania's Child Protective Services Law ("CPSL") 23 Pa.C.S. § 6301, et seq. by failing to immediately report Perpetrator's sexual misconduct with Plaintiffs even after reasonable cause to suspect that Isbell was sexually victimizing children, including Plaintiffs; and,
n. By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371, as adopted in Pennsylvania.

89. As a direct and proximate cause of Defendant's actions and omissions, and breach of the duties of reasonable care, Plaintiffs was sexually abused, resulting in damages.

**COUNT V**

**Negligent, Grossly Negligent, and Reckless Hiring/Retention/Supervision of Employees, Agents and/or Contractors**

***All Plaintiffs v. Defendant***

90. The allegations throughout this Complaint are incorporated as if set forth at length.

91. At all times relevant, the Defendant owed a duty to protect Plaintiffs from sexual abuse.

92. The Defendant violated its duty, and was negligent, careless, and/or reckless as follows:

a. By failing to establish adequate child abuse prevention policies,

procedures, and practices;

b. By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

c. By failing to adequately screen and supervise all those with access to children, including Isbell;

d. By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of child sexual abuse;

e. By failing to adequately monitor and supervise Isbell and Plaintiffs;

f. By failing to know the risks of sexual abuse inherent in youth serving activities;

g. By failing to require child sex abuse training for parents/guardians and children;

h. By failing to recognize the signs that Isbell was a child sexual predator;

i. By failing to conduct a background check on Isbell;

j. By allowing Isbell to be alone with children despite his history, which was known or should have been known;

k. By failing to report Perpetrator to the appropriate authorities;

l. By failing to terminate Isbell from his role despite Isbell's red flags and lack of fitness for the role; and

m. By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371, as adopted in Pennsylvania.

93. As a direct and proximate cause of Defendant's actions and omissions, and breach of the duties of reasonable care, Plaintiffs were sexually abused, resulting in damages.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## **<u>DEMAND FOR RELIEF</u>**

WHEREFORE, based on the foregoing, Plaintiffs respectfully request judgment in their favor and against Defendant as follows: (1) compensatory and punitive damages in an amount to be proven at trial; (2) pre- and post-judgment interest; (3) such other and further relief as this Court deems just and proper.

Respectfully Submitted,

**ANDREOZZI + FOOTE**

Dated: November 23, 2026

*<u>s/ Konstantinos Patsiopoulos</u>*
Konstantinos Patsiopoulos, Esq.

Haley J. Kyllonen, Esq.
4503 North Front Street, Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
teamb@vca.law
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The below individual with the firm of Andreozzi + Foote, hereby certifies that I served a copy of the foregoing documents(s) upon the below individuals via the Court's CM/ECF system.

Christopher J. Conrad Esq.
Daniel P. McGannon, Esq.
MARSHALL DENNEHEY, P.C.
200 Corporate Center Drive
Suite 300
Camp Hill, PA 17011
Email: cjconrad@mdwcg.com; dpmcgannon@mdwcg.com
*Counsel for Defendant*

Date: 11/23/2026

/*s/ Konstantinos Patsiopoulos*
Konstantinos Patsiopoulos, Esq.